Case number 18-1676 Eric Hopson v. Connie Horton, Warden. Argument not to exceed 15 minutes per side. Mr. Colin White, you may proceed for the appellant. Thank you, Your Honor. Colin White for Eric Hopson, and may it please the Court. The District Court's denial of Mr. Hopson's habeas petition should be set aside for reasons both procedural and substantive. To start with the threshold difficulty, under Krausen cases like it, it is the District Court's independent obligation to secure a record sufficient to meaningfully evaluate the petitioner's claims. We respectfully think that the District Court here did not do that. It's beyond reasonable dispute that this faked case against Mr. Hopson largely turned on the substance of the video. That video is not in the record, and the District Court— Mr. White, could I interrupt you? But I want to point out first, it's hard for me to hear you. You're cutting in and out. I don't know if you're too far from your mic or whatever you are. But armed with that suggestion to you, certainly it's the obligation on the District Court to review the transcript. But even then, there are exceptions if nobody cites a particular part of a transcript. This video is not the transcript. This video is an exhibit. So where do you drive this almost unconditional obligation on the District Court to review this video? So, two points here. Your Honor is certainly right that this Court has recognized what is called a narrow exception to the Adams rule, and essentially a futility circumstance that was recognized in Kraus itself. We don't think that this fits into that. With respect to the transcript question that you're going to raise, I think Kraus understood the term transcript to refer to the actual trial records. In this context, that includes the video. And we think that that is consistent as well with ordinary routine litigation channeling, which is to say it's difficult, I think, for the Court and for the parties, candidly, to fully address this case in the absence of the evidence on which the trial principle was termed. And I take it there's no dispute in that respect. We would say that... Well, let me interrupt you there and ask you a follow-up question, if I might. I mean, this is a case where the jury saw the video, right? Correct. And we're talking about a question of whether there is sufficient evidence here. If the jury saw it, why would not a reasonable jury have drawn the inferences that they drew when you have a combination of the jury saw it themselves and, at least in part, the prosecutor described what the video said? Two points. First, I just want to make sure that the Court is clear in this respect. I haven't seen the video, so I just want to be clear that my representations in this respect are somewhat complicated. Having said that, I think what we can see from what the State has offered here is that what the State has actually offered on the meaningful question, which is whether Mr. Hobson had knowledge that Mr. Beck brought a gun for use in connection with the robbery on that day, is really quite weak. And that's because the thrust of the argument made was, watch the video. This case is an easy one. And we think that there's a certain air of artificiality in trying to reconstruct a trial on a different basis. And we think that's displayed by the weakness of what the State actually offered. So what you're referencing is the other reasoning that's the basis here for the conviction of second-degree murder, finding of malice. So is there anything more that supports that than Hobson's statement, I didn't know he was going to rob the store then. I thought he was going to wait, but he didn't. Two, Beck used a large gun. Three, Petitioner and Beck grew up together. And four, the Petitioner fled the scene rather than assisting the gunshot victim. What else is your understanding is in this record that supports a finding of malice with the exception of those four things? I'm not aware of any, and I don't believe that the State has pointed to any other below or here. So is the basis of your request to view the video that you believe it either supports those things, making inferences drawn from them reasonable, but it also might not support them, and making inferences drawn from these statements unreasonable? So in particular, I think this goes to the question about the size of the gun. So in other words, it seems to me that a fair amount of the State's argument is this was a big gun. He had to know. In other words, Mr. Hobson had to know that Mr. Beck had brought it. And of course, we think there's evidence that it was concealed. And the point that we're trying to make is this is a knowable, we can know a fair bit more about this by actually looking at the evidence that was displayed in the jury at this point, rather than trying to reconstruct it solely from the scraps that the State has actually offered. Mr. White is, I'm not a gun expert, but I do know enough about him to know that there are different lengths of barrels on shotguns. And I know there is something called a sawed-off shotgun, which is designed to be concealed, but there's nothing in this record whatsoever that says that this was a sawed-off shotgun. So assuming it was a shotgun of normal length, can you conceive of a situation in which somebody can be sitting in a car with another guy with a shotgun, get out of the car with a shotgun, and the person in the car couldn't see it? So first, with regard to the size of the gun, I believe the State's pointed to evidence that it was between 18 and 24 inches in that circumstance. I think, sorry, I don't want to interrupt. No, you weren't interrupting. I was just waiting for your answer. But again, it's hard to, you go in and out when you get a little bit further away from your microphone. I understand, Your Honor. I will try to not commit that mistake. So were you saying that you think the record shows it was 24 inches in length? So the State's pointed to evidence that it was 18 to 24. And is that the barrel or the entire gun? As I sit here, I don't recall, Your Honor. Okay, thank you. But I certainly take the Court's point. We simply would submit, however, that in a case that largely rose and fell on evidence that's not in the record, that the appropriate thing is to send it back so that the district court can address that in the first instance, rather than ask this court to do that. We think that the district court had an obligation to either mute itself or address the absence in the record, and it didn't do that. But I will move on now to the merits. With respect to the murder question, it seems to be undisputed between the parties that the relevant question is whether Hobson had malice at the time the gun fired. And the theory that the State has actually advanced for that is this natural and probable consequences line in cases. For the reasons we were just discussing, however, we think that all that the State has on those disputed questions is just a mere modicum of evidence. In particular, with respect to the size of the gun, there was, again, evidence that it was concealed. And with respect to his knowledge, Mr. Hobson's knowledge of Mr. Beck's plans, the only evidence actually goes the other direction. With respect to the gun convictions, the through-line runs through both. What exactly did Mr. Hobson do that either displayed control of the gun or helped Mr. Beck actually possess it? And it seems to us that Mr. Hobson's presence, as far as the State has offered, didn't do anything one way or the other to help Mr. Beck actually possess the gun. And I think with respect to the felony firearm charge in particular, the question is whether the defendant's words or deeds procured, and so on, is specifically helping the other defendant with regard to the felony firearm conviction as opposed to the other. We don't think that the State here has produced sufficient evidence in that regard. With regard to the ineffectiveness. Could I ask you a question about that, please? So he hears a gunshot, and he rushes into the store. Is it fair for a reasonable jury to have concluded he knew at that point that this robbery is actually occurring? We don't contend otherwise. So now whether he knew in advance or not, he rushes into the store, and he doesn't go to the aid of the person who got shot. He orders, your client is not armed, right? Right. So he orders the guy to take off all of his clothes. Now, why would the guy take off all of his clothes but for the fact that the other guy is standing there with a shotgun? I can't conceive of a reason as I sit here. I'm not sure what that shows with regard to the assisting in the possession of the gun. Well, that was going to be my next follow-up question, depending on how you answered that one. So you would concede that it's reasonable to believe that the guy or the guy obeyed your client because the other guy is standing there with a shotgun after having just shot the other employee? Yes. So the theory of the state, as I understand it, either correct or incorrect here, is some sort of combination of either constructive possession or joint possession. So why would this not be an indicia of joint possession, that they both set out to rob the store, whether it was at that time or not. One guy goes in, shoots the gun. The other guy rushes in after him and then takes an active part assisted by the guy with the gun. It just sounds like there's joint possession. So I take the Michigan Court of Appeals' finding on this to be one of constructive possession, to be one of reasonable accessibility. And we think that under Mitch, the question, as I think the Michigan Court of Appeals recognized, was whether Mr. Hobson knowingly had the power and the intention at a given time to exercise dominion or control over the gun that Mr. Beckman carried. So we think the question whether Mr. Hobson was, at that moment, engaged in something that helped Mr. Beck commit the robbery just doesn't go to the possession of the gun. I see, I think I'm coming from my remodeling time. My device is expired, so I'll reserve any balance for remodeling. That's for the court. All right, Mr. Ping. Good afternoon, Your Honors. Assistant Attorney General Daniel Ping appearing on behalf of Gordon Horton and the State of Michigan. Can everyone hear me okay? Yes. Yes. All right, very good. The first thing I want to talk about is this threshold issue of the, quote, unquote, missing surveillance video in the district court record. Now, you know, first of all, applying the rules of Crouse to this case would represent an expansion of that rule beyond testimony. Testimony being the lifeblood of the trial. You know, Crouse, I think, gives the petitioner a little bit of a leg up because that was video in that case, but it was polycom video trial testimony. But setting aside that distinction for a second, you know, Crouse and Clark permit an exception for trial court records when the state record adequately summarizes the content of those records and the defendant, rather than disputing those facts that appear in the summary, instead is disputing the conclusions that should be drawn from those facts. And that's exactly what happened here. We have no one is meaningfully disputing the major bullet points on the timeline of what happened in this video. Mr. Hopson is not saying, no, I didn't go into the store. In fact, I turned on my heel and I ran down the street. So, the appellant's brief challenges information that can only be found from the video, in my estimation. It talks about Beck, despite large, whatever that is, size of the gun, Beck had it concealed under his clothing until after he entered the store. The brief also argued that the district court's reliance on the putative size of the gun was improper. What inferences can be drawn from the size of the gun should be determined from the absent video. And in the reply brief, respondent points to evidence concerning the size of the gun, but does not meaningfully confront the fact that Mr. Beck removed the gun from his clothing only as he shot the store clerk, while Mr. Hopson remained outside. All of those would have to be shown by the video itself. Right? Judge, I disagree. Isn't that a challenge to the state showing the video and giving a running commentary on it, which is what is in the record, versus the judge actually looking at the video, because counsel's arguments and counsel's narrative of a video is not evidence, right? That's correct, Your Honor. I think it's important to draw a distinction here between the undisputed facts and the inferences that arise out of those facts. So to the two points you made, first of all, the concealment. We are fully on board with the version of facts that Mr. Beck kept the gun concealed until he drew it. He kept it within his clothing until he drew it on the clerk. Regarding the size of the gun, the effect of the size of the gun on the theory that this was concealed through the car ride, that's an inference. And I'd also add that the size of the gun appears in the testimony as well. So I've yet to hear exactly what the district court would be doing that doesn't entail what's fundamentally the job of the jury, which is to say, you know, I don't believe this idea that Mr. Beck, that these two didn't have a plan. So the question is whether the plan was an armed robbery or a robbery. We know this guy was appropriately charged with being involved and continued after a shot was fired that ended up killing somebody. I mean, there's no question that Hobson did that. But the question is whether he can be charged with malice, the intent requirement of second degree murder, if he does not know that his co-thief is going in there with a weapon. And I guess my problem is it seems to me it's so simple. Just look at the video. We've got testimony in the record of Mr. Dye when he arrived at the store and saw Beck coming out. He says he was tucking something. I don't know what it was, but he was tucking something as he was walking out. What does that tell you about the size of the weapon? Except that it appears that he was tucking it into his clothing in a way that this guy couldn't even see the gun. So is this gun visible or is it easily tucked in clothing? And and Hobson wasn't even aware of it. Well, Judge, I'd like to follow that. Let's follow that possibility through to its conclusion. This gets remanded to the district court and the district court agrees with that particular inference that this gun could be easily concealed. That is still an improper inference that the district court would be supplanting as a 13th juror. And I also think that we might be giving a little too much too much weight to this idea of the length of the gun, which, again, did appear separately in the testimonial record. To answer your question earlier, Judge Strange, about the sum total of the evidence that Mr. Hobson knew that Mr. Beck would be armed. There are a few more things to add to that list. There was, you know, extra video evidence of the size of the gun. There was their lifelong acquaintance. There was the fact that he acted as a lookout and that came from a witness. The unarmed or the uninjured victim testified to that. There was a statement that he didn't know he was going to shoot him right then. But there was also Mr. Hobson's. He didn't know that he was going to rob it right then. And that's a big difference from he didn't know he was going to shoot somebody. Well, I think that might be a case. I don't want to parse it too much, but they knew they were going. I mean, at the very least, I believe Petitioner is admitting that they showed up with the intention to commit an unarmed robbery. So I think when he uses the word. We were going to do it. I didn't know he was going to do it then. I don't dispute we've got we've got a robbery guy. We've got a guy who participated after the shot. But the question is, are you satisfying Jackson? Is this are you proving the essential elements of the crime beyond a reasonable doubt? Because, you know, you've you've got the the evidence has got to support the charge. If and we're talking about second degree murder. So that's the question. Is there and I'm assuming that the rule is, is there before he went in with the weapon? Did Mr. Hobson know there was a weapon from which it is a reasonable inference? But that, you know, you go in with a weapon, somebody may get shot. But that's not the question here. The question here is whether there was that malice and that these list of things show. And for me, I'm just struggling with why don't we cut to the chase and look at the video? Isn't that the responsibility of the court under Krauss and the simplest way to resolve this whole thing? I would disagree, Your Honor, respectfully. I think that's not the question before this court. The question is the first question is it's was the Michigan's Court of Appeals decision reasonable? And they did see the video. And what I keep hearing is that, you know, let's look at the videos for what? Is it going to I can't possibly imagine a scenario in in which the video reveals that no reasonable juror could have drawn these inferences. I mean, it would have to be fundamentally different from the summary of the video that appears in the court. And the petitioner does not argue that it is fundamentally different. What what we keep doing is engaging in these sort of second guesses of potential inferences. I mean, let's say that Mr. Hopson, after the gun was fired, he acts visibly surprised. He's stunned. He's frozen in his tracks and then goes ahead and assists with the remainder of the armed robbery. You know, you could very well say, wow, that's that looks like he didn't know that was coming. But a jury could say, you know, maybe he's afraid of loud noises. Maybe, you know, there's something to his idea that he didn't think he was going to shoot right then, but he knew he was armed. You know, these are all jury questions. And we are looking at the Michigan Court of Appeals, the reasonability of that decision and their interpretation of the record. How about this scenario, Mr. King? How about the scenario that you assume he didn't know about the weapon, but his course of conduct after he hears shots is sufficient to infer malice on his part, i.e. that he went into this, you know, and he didn't run away when the shots were fired. Instead, he did something entirely different. Well, I mean, in a world where the petitioner did not know that his co-conspirator had a gun, I don't think you can retroactively impute malice by the fact that he decided to hop on board with the robbery. But here we have a tapestry of circumstantial evidence that there was a plan. And Michigan recognizes that when you know there's a plan, there's a valid inference that everyone was in on the details of that plan. And so I think the post-shot conduct is relevant to Mr. Hobson's pre-shot knowledge. You're absolutely right, and I should have included that permissible inference in the question I asked you, but I didn't. So, I mean, I think that's great. Where are we in terms of time? Laurie, where are we in terms of time? I have two minutes and 40 seconds. Okay, go ahead. I'm sorry. All right. I worry about my own looking at the clerk when she raises up the thing because I'm not accustomed to doing it that way and I get caught up in the argument. So that was for me, not for you, and you still have your two minutes plus. All right. Thank you, Judge. So, you know, I've really kind of dipped into the merits in the course of talking about this threshold issue. I think that the, you know, the sufficiency evidence is right there. I think it's important to remember the epidefference that's happening here, that applies here. And to that point, oh, I see that my time's been restored. I can relax a little bit. Thank you. You know, the petitioner made the point that the Michigan Court of Appeals opinion used the wrong framework. And I, you know, I will be the first to admit that the opinion was a little bit puzzling. But I think that their inclusion of a discussion on felony murder should be viewed in the context of the fact that these two appeals were consolidated. And I think they recognize that, you know, it doesn't really matter. Because at the end of the day, they did turn their sights on second-degree murder, the elements of that crime, and they properly analyzed it. And in any event, under Richter, this court reviews the decisions of that state court and not necessarily the rationale that they took to get there. And with that, I would ask this court to affirm. And I thank you very much for your flexibility in holding these remote arguments. Thank you. Mr. White. Thank you, Your Honor. Two very quick points. First, with regard to the felony murder Jackson question that my friend on the other side was just discussing. From our point of view, Jackson directs that the sufficiency analysis be conducted with specific reference to the crime of conviction. And the gist of this analysis, in our view, is Mr. Hobson should have been convicted of felony murder. And with that in mind, we're going to sort of give the back of the hand to the second-degree murder charge. And we think that it's exactly that sort of imprecision that leads to the logical leaps that we've pointed out. And finally, Judge Strange, we would submit that your instinct is the right one. The simplest way to resolve this case is to send it back so that the district court can finish the work that added science to it. We haven't heard any assertion that the video does not exist. We have not heard any reason why the district court should not review any prejudice that the state would suffer from that. And we think that under cases like NASB, the point of habeas review is to take this sort of thing more seriously than we think we can on this record. Mr. White, a quick question. I'm just curious. This is not deciding factor in this case, and I'm just curious. Why haven't you sought the video and looked at it? Under Adams, Your Honor, I think it's pretty clear that this court can't consider it. So I think it would be improper to do that. You're certainly right that I haven't in my own time sought it out. But to me, it's not something that this court can look at. And I think to be candid, as part of my obligation to this court's appointed counsel, it seems to me quite important to raise this. But you're right that I haven't sought it out. It didn't seem to be legally relevant in this court's decision under Adams. All right. We appreciate very much the arguments that both of you have given. We'll consider the case carefully. We note also, Mr. White, that your court appointed counsel for Mr. Hobson, and we are very, very appreciative of your having accepted the appointment and for the careful work you've done in the case and your advocacy today. Thank you. Thank you, Your Honor.